F. RODRÍGUEZ HERMANOS & Co., Plaintiff and Appellant-Appellee, v. ENCARNACIÓN ABOY DE CINTRÓN, Defendant and Appellee-Appellant.

No. 9176. Argued December 26, 1945.—Decided July 26, 1946.

*Miranda & Miranda Esteve* for appellant-appellee. *Brown, Newsom & Córdova* for appellee-appellant.

MR. CHIEF JUSTICE TRAVIESO delivered the opinion of the court.

Fermín Rodríguez and his wife Matilde Lanza Martínez, by a deed of December 18, 1925, which was recorded in the registry of property, acknowledged having received, as a loan from Encarnación Aboy widow of Cintrón, the sum of $25,000, which they bound themselves to repay in instalments as follows: $5,000 on December 18, 1927, and the balance of $20,000 on a like day and month of 1928; said loan to bear interest at the rate of 10 per cent per annum until fully paid, the interest being payable at the end of each monthly period; and in order to secure the payment of the principal sum, the agreed interest thereon, and an additional debit item of $2,000 they constituted a mortgage on an urban property.

By a deed of December 11, 1928, which was also recorded in the registry of property, the above-mentioned mortgage contract was modified and extended as follows: The payment of the $25,000 was extended for a term of five years, counted from December 18, 1928, such payment to be made in annual instalments, thus: $2,000 on December 18, 1929; $3,000 on December 18 of each of the years 1930, 1931, and 1932; and the balance of $14,000 on December 18, 1933; the additional interest rate of 10 per cent was reduced to 9 per cent per annum payable at the end of each monthly period; and it was stipulated that the creditor reserved to herself the right

to treat the term of the mortgage loan as expired in case of default in any of the conditions set forth in the mortgage deed.

F. Rodríguez Hermanos & Company, a commercial partnership, by a purchase deed of January 17, 1929, acquired the mortgaged property and assumed the obligation to pay the $25,000 mortgage under the terms stated above.

By a private instrument executed on May 22, 1930, Fermín Rodríguez and his wife Matilde Lanza Martínez, the partnership F. Rodríguez Hermanos & Company, represented by its managing partner Fermín Rodríguez, and Encarnación Aboy widow of Cintrón, represented by her attorney-in-fact José Hernández Usera, agreed to extend and did extend to December 18, 1930, the term for the payment of the $2,000 instalment which had expired on December 18, 1929, under the same conditions set forth in the mortgage deed, except that interest at the rate of 10 per cent would be charged on said instalment. This private instrument was never embodied in a public deed and, therefore, it was not recorded in the registry of property.

The creditor, Mrs. Aboy widow of Cintrón, on February 19, 1932, instituted, in the District Court of San Juan, a summary foreclosure proceeding against F. Rodríguez Hermanos & Company, and alleged that the latter partnership was indebted to the mortgage creditor in the sum of $25,000 as principal and in the sum of $1,534.94 as interest from June 19, 1931, to February 18, 1932, including in this liquidation the additional 1 per cent interest on the annual instalment of $2,000 which became due on December 18, 1929, according to the stipulation set forth in the private extension agreement mentioned above. In order to secure the effectiveness of the judgment, on February 19, 1932, an attachment was levied on the rents and profits of the mortgaged property. The foreclosure proceeding followed the course provided by law, and in pursuance thereof, on April 21, 1932, said property was awarded to Encarnación Aboy widow of Cintrón

for the sum of $22,000, which was applied in partial satisfaction of the mortgage claim, and the foreclosing creditor held possession of the property from the latter date until June 27, 1940, when she sold it to the Municipal Housing Authority of the Capital of Puerto Rico.

F. Rodríguez Hermanos & Company, on September 14, 1943, brought the action herein against Encarnación Aboy widow of Cintrón praying for the annulment of the aforesaid foreclosure proceeding on the following grounds:

(1) Because in the initial petition for foreclosure there was included a claim for additional interest of 1 per cent on the $2,000 instalment due on December 18, 1929, which claim was not secured by mortgage, since the same was agreed in a private instrument executed by the parties.

(2) Because in the assumption of liability the foreclosing creditor failed to bind herself to indemnify interested third persons for any loss or damage suffered by the latter in consequence of the mortgage foreclosure proceeding.

(3) Because the value of the property involved in the foreclosure proceeding was not previously assessed in order to determine the minimum price at which it must be sold at public auction in accordance with the provisions of § 175 of the Mortgage Law Regulations, the Act of March 9, 1906, relative to the manner of satisfying judgments, being erroneously invoked and applied as a legal basis for the initial petition.

(4) Because the writ demanding payment which was served on the partnership, plaintiff herein, in the foreclosure proceeding is void, inasmuch as it is stated therein that the interest to be collected on the principal sum of $25,000, at the rate of 9 per cent per annum, from June 18, 1931, to February 18, 1932, amounted to $1,534.94, when as a matter of fact said interest only amounted to $1,500, and thus claim was made for $34.94 in excess of the amount due.

In consequence of the alleged nullity, the plaintiff sought to recover the value of the mortgaged property at the time

the defendant took possession thereof which it estimated at $42,278, since the specific property could not be returned inasmuch as it had been alienated in favor of the Municipal Housing Authority of the Capital of Puerto Rico, plus the rents and profits yielded by said property from February 19, 1932, to June 27, 1940, amounting to $45,100, and an additional sum of $550 monthly as damages, from June 27, 1940, to the date on which any judgment of recovery rendered in this case might become final and enforceable, after deducting the amounts paid by the defendant as property taxes and adjudging the defendant to pay the costs, expenses, and attorney's fees of the action; and it consented and further prayed that judgment by confession be rendered adjudging the plaintiff, F. Rodríguez Hermanos & Company, to pay to the defendant in this case, Encarnación Aboy widow of Cintrón, the sum of $25,000 as principal, amount due by virtue of the above-mentioned mortgage, plus interest thereon at the rate of 9 per cent per annum from June 18, 1931, to the date on which any judgment rendered in this case in favor of the plaintiff partnership might become final and enforceable, together with additional interest at 1 per cent on the annual instalment of $2,000 which had been extended pursuant to a private instrument, accruing from the latter date to that on which said judgment might become final.

The defendant filed her answer, admitting some of the averments of the complaint and denying others. She alleged that the mortgage foreclosure proceeding in question was valid, and that no essential error had been committed in the prosecution thereof; that the rents derived from the property involved in the proceeding, from 1932 to 1940, amounted to $34,812.39, and that she had paid during that period the taxes due on said property; that the reasonable value of the mortgaged property at the time the defendant took possession thereof was $25,992.05; and that in the event the foreclosure proceeding were annulled the plaintiff would not be entitled to the rents after June 27, 1940, since on the latter date the

defendant sold the mortgaged property to the Municipal Housing Authority of the Capital of Puerto Rico. As new matter of defense, the defendant alleged: (1) that even assuming the existence of the grounds for nullity alleged by the plaintiff, the same would not be inconsistent with substantial justice, and would not prejudice or affect in any way the rights of the contending parties, in accordance with the provisions of Rule 61 of the Rules of Civil Procedure for the courts of Puerto Rico; (2) that the question brought by the plaintiff was barred under § 1868 of the Civil Code (1930 ed.), as more than one year had elapsed from the time of the sale at public auction of the mortgaged property to that of the filing of the complaint; (3) that the plaintiff was guilty of laches, that is, undue and unjustifiable delay in bringing this action after the elapse of eleven years, and hence it was not entitled to challenge the judgment rendered in the summary foreclosure proceeding; and (4) that since the plaintiff had accepted, pursuant to a private instrument, the extension granted to it for the payment of the $2,000 mortgage instalment, which had become due on December 18, 1929, subject to the condition of paying on that instalment interest at the rate of 10 per cent per annum until fully paid, the mortgaged property being answerable for the payment of this additional interest in accordance with said instrument, the plaintiff was estopped to repudiate its own acts by alleging, as a ground for nullity of the foreclosure proceeding, that the additional interest agreed in the said instrument had been included and claimed as part of the interest secured by the mortgage.

The defendant also set up a counterclaim as a part of her answer and further alleged: that in the event of annulment of the summary foreclosure proceeding, the plaintiff would be owing to the defendant the principal sum of $25,000, plus the interest agreed in the original mortgage deed, as modified by the extension deed and the private instrument above mentioned, said principal sum and interest amounting to $52,781.29 up to September 14, 1943; that the plaintiff

would further owe to the defendant the sum of $25,321.02 on account of expenses for repairs, taxes, water, light, administration, etc., for the period elapsed from the time the defendant took possession of the property to June 27, 1940; and that the defendant derived from said property, up to June 27, 1940, rents and profits amounting to $34,812.39 and sold the property for $30,000, paying $1,000 to Eloy García Cruz as a commission sale and $117.15 for expenses connected with the drafting of the deed; and that, therefore, after deducting from the debt owed by the plaintiff to the defendant by reason of the foregoing items, the amount of said rents and profits plus the sum of $25,992.05 which represented the market value of the mortgaged property in 1932, plus interest thereon at the legal rate up to September 14, 1943, there would still remain a balance of $12,294.31 owed by the plaintiff to the defendant.

In opposition to that counterclaim, the plaintiff alleged that it admitted owing the total amount of the mortgage indebtedness and the agreed interest thereon; but for lack of information and sufficient knowledge, it denied that it owed the $25,321.02 claimed by the defendant as disbursements for necessary repairs, taxes, water, light, etc., for the period elapsed from the time the defendant took possession of the mortgaged property to June 27, 1940; that the defendant derived or should have derived as rents and profits up to September 1943, the sum of $550 monthly, or a total of $76,650, plus a like sum for each subsequent month, and the plaintiff is not bound to pay any commission or notarial expenses on account of the sale of the property to the aforesaid municipal agency, inasmuch as it had no intervention in such sale For lack of information it further denied that the property was sold for $30,000, or that the defendant was entitled to recover interest at the legal rate on the alleged selling price, or that the plaintiff owed to the defendant, up to September 14, 1943, the sum of $12,994.31 or any other sum.

After the case was tried, the lower court, on August 17, 1944, rendered a judgment containing the following pronouncements: (1) annulling the summary foreclosure proceeding instituted by Encarnación Aboy widow of Cintrón against F. Rodríguez Hermanos & Company, case No. 16,238 of that court; (2) adjudging the defendant to pay to the plaintiff $32,000 as the market value of the property in the year 1932, and $38,758.21, as rents yielded by the property during the period from April 22, 1932, to June 27, 1940; (3) adjudging the defendant to pay to the plaintiff the sum of $297.35, as rents yielded by the property and derived by the defendant during the period from February 20 to April 21, 1932; (4) adjudging the defendant to pay to the plaintiff the sum of $5,775, as interest at the legal rate on $30,000, from June 27, 1940, to September 17, 1943; and (5) adjudging the defendant to pay to the plaintiff the costs of this action, $400 as attorney's fees, and interest at the legal rate on $76,830.56, the total amount of the claim, excluding costs and attorney's fees, from the date of the rendition of the judgment to that of the payment thereof; and (6) adjudging the plaintiff to pay to the defendant $25,000, as the principal amount of the mortgage loan made by the latter on December 18, 1925; $27,781.29 as interest on said loan during the period from June 18, 1931, to September 14, 1943, at the rate of 10 per cent on the mortgage instalment which became due on September 18, 1929, and at the rate of 9 per cent on the remaining portion; and $25,331.02 as preservation and administrative expenses incurred in connection with the mortgaged property during the time the defendant had possession thereof, or a total of $78,112.31, plus interest thereon at the legal rate on the date of the judgment to that of the payment thereof.

The defendant urges that the lower court erred:

1. In not sustaining the defense of prescription.

2. In not sustaining the defense of laches.

3. In not sustaining the defense of estoppel.

4. In not sustaining the defense of want of prejudicial error.

5. In finding that the value of the property in the year 1932 was $32,000.

6. In finding that the gross rents yielded by the property from the time the defendant-appellant took possession thereof in 1932, to that of the sale in 1940, totalled $38,758.21, and the net proceeds of such rents amounted to $13,427.19.

7. In granting to the plaintiff-appellant interest on $30,000, as the selling price of the property sold to the Municipal Housing Authority.

8. In granting to the plaintiff-appellant attorney's fees amounting to $400.

In support of its appeal, the plaintiff urges that the lower court erred:

1. In adjudging the plaintiff-appellant to pay to the defendant-appellee the sum of $5,802.27, as necessary expenses for the preservation of the property involved in this litigation.

2. In finding that the amount which the defendant-appellee must pay as rents and profits that the plaintiff-appellant failed to receive or should have received is $38,758.21.

3. In estimating at $32,000 the value of the property at the time the plaintiff-appellant was deprived thereof.

4. In adjudging the defendant-appellee to pay to the plaintiff-appellant interest at the legal rate of 6 per cent on $30,000, from June 27, 1940, to September 14, 1943.

5. In adjudging the plaintiff-appellant-partnership to pay to the defendant-appellee interest at the rate of 10 per cent on the mortgage instalment, which became due on December 18, 1929, and at the rate of 9 per cent on the balance of $23,000 from June 27, 1940, to September 14, 1943.

6. In adjudging the defendant-appellee to pay to the plaintiff-appellant the sum of $297.35, as damages caused by the wrongful attachment levied by the latter on the rents in order to secure the effectiveness of the judgment.

508

7. It erred and abused its discretion in granting only $400 as attorney's fees.

We now turn to consider the questions raised by the defendant and then those set up by the plaintiff.

We will take up first the defenses relied on by the defendant which are of a privileged character, then the questions of law raised by the plaintiff in connection with the nullity of te mortgage foreclosure proceeding, and, lastly, the questions of fact involved in this litigation.

■ The defendant urges that the action for nullity brought by the plaintiff is barred under the provisions of § 1868 of the Civil Code (1930 ed.), inasmuch as more than one year has elapsed from April 27, 1932, the date on which the mortgaged property was sold at public auction, to September 14, 1943, the date on which the complaint herein was filed.

In *Román* v. *Rivera,* 43 P.R.R. 512; *Gutiérrez* v. *Longpré,* 44 P.R.R. 643; *Heirs of Trías* v. *Porto Rico Leaf Tobacco Co.,* 50 P.R.R. 88; and *Crespo* v. *Schluter,* 58 P.R.R. 833, this court, construing the law, fixed at 15 years the limitation period for this kind of actions. The limitation established by § 1868(2) of the Civil Code (1930 ed.) applies exclusively to the actions for damages arising from fault or negligence referred to in § 1802 of the same Code.

Distinguishing between the fault and negligence dealt with in chapter II, title XIV, book IV of the Civil Code and other kinds of fault and omission, Manresa (*Comentarios al Código Civil,* 1907 ed., vol. 12, pp. 600–01) says:

" . . . the only kind of fault and omission or negligence which may be and is the subject matter of the present chapter, is the second one, namely, that which without the existence of a prior obligation and without any contractual antecedent, produces an injury or prejudice that originates in an act or omission which involves a civil responsibility only; that is, which although, wrongful, does not have the character of a public offense or transgression it not being punishable by law."

In the instant case, the action for damages brought by the plaintiff is derived from the paragraph of Art. 169 of the Mortgage Law Regulations (*Pontón* v. *Sucrs. of Huertas González*, 42 P.R.R. 511), which textually reads as follows:

"The petition referred to in this article, which shall always be authorized by the signature of an attorney at law, shall enumerate the facts and the legal reasons supporting the correctness, the subsistence and the demandability of the claim and the jurisdiction of the court; it shall specifically state the exact amounts collected by way of interest or on account of the principal of the debt, stating also the net amount of the claim which, by the mere act of instituting the proceedings the creditor will contract, *assuming liability for any loss or damage the debtor or interested third persons may suffer through malice or negligence in not making a true statement of facts and of the circumstances which the judge must take into consideration in authorizing the institution of the proceedings and continuing them."* (Italics ours.) (Comp. Stat. 1911, p. 1140, § 7266.)

In *Giménez et al.* v. *Brenes,* 10 P.R.R. 124, 137, this court held that "the summary procedure for the recovery of mortgage debts is the result of a contract between parties wherein they have agreed upon the prestations and have also stipulated the method of collecting the debt in case of noncompliance, that is to say, in case of failure of the debtor to pay." It is manifest that the malice or negligence referred to in Art. 169, *supra,* originates in a contractual obligation or at least in a contractual antecedent, for if no contractual relationship had been established between the litigants in this case, the obligation of the defendant to indemnify the plaintiff by reason of the failure to prosecute the summary foreclosure procedure in accordance with the provisions of the Mortgage Law, would have never arisen. See *Carmona et al.* v. *Cuesta,* 20 P.R.R. 215; *Gutiérrez* v. *Longpré, supra.*

The prescription in the case at bar is not governed by the provisions of subdivision 2, § 1868 of the Civil Code in force, which provides:

*"Section 1868.—Actions prescribing in one year.*

The following prescribe in one year:

1. * * * * * * *

2. Actions to demand civil liability for grave insults or calumny, and for obligations arising from the fault or negligence mentioned in section 1802, from the time the aggrieved person had knowledge thereof.''

Section 1802 of the Civil Code in force reads as follows:

*"Section 1802.—Person causing damage to another must repair it, when.*—A person who by an act or omission causes damage to another when there is fault or negligence shall be obliged to repair the damage so done.''

Said § 1802 is in accord with § 1042 of the same Code which states:

*"Section 1042.—How created.*—Obligations are created by law, by contracts, by quasi contracts, and by illicit acts and omissions or by those in which any kind of fault or negligence occurs.''

And § 1046 comprised in book 4 of the Civil Code in force, textually reads thus:

*"Section 1046.—From acts or omissions, not punished by law.*— Those arising from acts or omissions, in which fault or negligence, not punished by law, occur, shall be subject to the provisions of chapter II, of Title XVI of this Book.''

From a careful study of chapter 2, title XVI, book 4 of the Civil Code, which comprises §§ 1802 to 1810, inclusive, we find that the liabilities established by those Sections arise from fault or negligence, which without the existence of a previous obligation and without any contractual antecedent produce an injury or prejudice that originates in an act or omission derived from such fault or negligence. We infer from those same Sections that between the damage and the fault or negligence causing it there must exist the relationship of cause and effect, and that the obligation to repair the damage must not be accessory to another responsibility or the result of the inability to enforce any other legal or contractual responsibility.

Since the plaintiff in the present case was precluded from bringing an action under § 280 of the Civil Code in force against the holder and occupant of the property involved in the action for annulment of the foreclosure proceeding, said property being in possession of a third person, it chose, according to the allegations of the complaint, to invoke the provisions of § 38 of the Mortgage Law which prescribes that "in any case in which the resolutory or rescissory action can not be brought against a third person in accordance with the provisions of this article *the proper personal action may be brought for the recovery of damages from the person who may have caused them.*" (Italics ours.) The foregoing provisions are in accord with those contained in the second subdivision, § 1247 of the Civil Code in force.

The action for damages herein is of a subsidiary character, for the plaintiff is not bringing a real and direct action against the property involved in the litigation but a personal action to establish its injured rights; and, as may be seen, the action instituted is not one brought to enforce the liability for fault or negligence referred to in subdivision 2 of § 1868 of the Civil Code, and hence the limitation of one year established by that Section is not applicable to the present case. Here we are dealing with a personal action for which no special term of prescription is fixed and, therefore, it prescribes after 15 years in accordance with § 1864 of the Civil Code.

The lower court did not err in holding that the limitation period for this kind of actions is 15 years.

 The defendant urges that the suit brought by the plaintiff should be dismissed, inasmuch as the plaintiff has been guilty of an unjustifiable delay, laches, in bringing its action for nullity after the lapse of about eleven years from its accrual to the award of the mortgaged property in favor of the defendant. The defense of laches is an equitable one peculiar to the equity courts and has no application to actions at law. See 30 C.J.S. § 113, p. 523.

To uphold the defense of laches in cases like the present one would be to nullify the provisions regarding prescription contained in the Civil Code. The Supreme Court of Spain, in a judgment rendered on April 18, 1902, *Jurisprudencia Civil*, vol. 93, p. 636, held: "A delay in the enforcement of a claim does not carry with it any diminution of rights, unless the precise time required for their extinguishment has elapsed." The same doctrine has been laid down by this court in *Alcaide v. Morales*, 28 P.R.R. 258 and *Román v. Heirs of González*, 38 P.R.R. 362, 368, wherein it was declared that the defense of unjustifiable delay or *incuria laches* did not lie where the action involved has not prescribed at the time it is brought. The question of laches in connection with the prescription was amply discussed by this court in *Serrano v. Talavera*, 65 P.R.R. 411, decided on November 29, 1945, where speaking through Mr. Justice de Jesús the court said:

"The action for an accounting in the Anglo-American Law is one in equity and, since the defense of laches is an equitable doctrine it is applicable to actions for accounting under the Anglo-American Law. But even under this system of jurisprudence laches within the term of the statute of limitations is no defense at law. *United States v. Mack*, 295 U. S. 480, 489 (1935); *Transbel Inv. Co. v. Scott*, 26 A.(2d) 205 (Pa. 1942).

"Irrespective of whether or not the evidence in this case was sufficient to invoke the defense of laches in an action for accounting in a court of equity, the doctrine of laches is not applicable to the present case. In this jurisdiction the action to render accounts does not spring from Equity Jurisprudence. On the contrary, it is governed by our Civil Code which in turn originated in the Spanish Civil Code. Pursuant to § 1861 of the Civil Code actions are barred by a mere lapse of the time specified by law and as decided by the Supreme Court of Cuba in its *decision No. 163 of November 5, 1931*, one who pleads prescription *should prove nothing else than* the lapse of time. Therefore, the period of prescription fixed by law may not be shortened by any circumstance.

"We accept that in this jurisdiction the doctrine of laches has often been applied, but it has always been in connection with extraordinary remedies taken from the Anglo-American Law."

The decisions in *Montes* v. *Domenech, Treas.*, 48 P.R.R. 262, and *Urdaz* v. *Padín, Commissioner*, 48 P.R.R. 297, are not applicable herein as they are of an equitable character. The error assigned is nonexistent.

 The defendant contends that the lower court erred in not sustaining the defense of estoppel, because, under the circumstances of the present case, it permitted the plaintiff to allege and maintain that the private instrument of extension, *supra,* lacked the effectiveness required by the summary foreclosure proceeding. Since that extension agreement was not embodied in a public deed, it was never recorded, and therefore the additional interest at the rate of 1 per cent per annum agreed by the contracting parties, was not covered by the mortgage security. See § 146 of the Mortgage Law and §§ 1758 and 1776 of the Civil Code (1911 ed.); *Fernández* v. *Roig*, 2 D.P.R. 50; *Tesorero* v. *Registrador*, 2 D.P.R. 601. Nevertheless, the defendant, in support of its defense of estoppel, urges: (1) that it was the intention of the plaintiff-appellant, and the latter so represented, that the private agreement should modify the mortgage, and it received and accepted all the corresponding benefits under that agreement; (2) that it was the intention and hope of the plaintiff-appellant that the defendant-appellant would rely on the efficacy of the private agreement as a modification of the mortgage, and accordingly, the latter did so rely; and (3) that to permit the plaintiff-appellant at this time to show that the private agreement is ineffective would cause grave prejudice to the defendant-appellant.

In determining the legal question raised by the defendant, we refer to the record of the case. After a careful and detailed study of that record, we can state that the plaintiff has never challenged the validity and enforceability of the private instrument extending the mortgage. It has merely attacked the summary foreclosure proceeding wherein it was sought to collect said interest and it has done this in accordance with the right granted to it by Art. 175 of the Mortgage

Law Regulations, which right it has not renounced and may enforce within the period of 15 years, as it has already been held in this case. The additional interest on the above-mentioned $2,000 instalment constitutes a personal and written obligation in favor of the defendant as against the mortgage debtors (*Fernández* v. *Roig, supra*) and, therefore, the defendant was not entitled to resort to a summary foreclosure proceeding but to an ordinary action. See §§ 128 to 133 of the Mortgage Law and Arts. 168 to 176 of the Regulations. *Figueroa* v. *Boneta,* 58 P.R.R. 811.

Moreover, it should be noted that the creditor was not bound to resort to the summary procedure of the Mortgage Law in order to enforce her claim. She could have brought an ordinary action and, consequently, it can not be said that by subscribing the private instrument of extension the debtor subjected itself to the defense of estoppel, for it did not, directly or indirectly, induce the mortgagee to resort to that special proceeding, and if she did so she acted at her peril.

For the reasons stated, we are of the opinion that the alleged error is nonexistent.

██ The defendant urges that ''the lower court erred in not sustaining the defense of lack of prejudicial error,'' on the ground that the error committed in the prosecution of the summary foreclosure proceeding does not justify the annulment of that proceeding. She relies on the provisions of Rule 61 of the Rules of Civil Procedure, which in its pertinent part reads as follows:

''No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial right of the parties.''

It is unquestionable that the above-transcribed rule has no application to a summary foreclosure proceeding, inasmuch as subdivision (*a*), Rule 81 of said Rules of Civil Procedure, provides: "These rules shall be applicable to all ordinary civil actions and to all proceedings for mandamus, injunction, interdict for the retention or recovery of the possession of real property, intervention (*tercería*), and enforcement of homestead claims." Everything not expressly included in this rule is impliedly excluded from the effect of the Rules of Civil Procedure.

It has been repeatedly held by this court that the inclusion in a summary foreclosure proceeding of a claim for an amount not secured by mortgage renders said proceeding void. *Santos* v. *Crédito y Ahorro Ponceño,* 41 P.R.R. 934; *Martorell* v. *Crédito y Ahorro Ponceño,* 42 P.R.R. 632; *Vázquez* v. *Gutiérrez,* 52 P.R.R. 162; *Figueroa* v. *Boneta,* 58 P.R.R. 811; *Torres* v. *Fernández,* 65 P.R.R. 584.

We can not overlook the fact that a summary foreclosure proceeding is practically an *ex-parte* proceeding, and hence all the prerequisites and conditions precedent to its institution must be strictly observed. *Ojeda* v. *Registrar,* 39 P.R.R. 219; *Martorell* v. *Crédito y Ahorro Ponceño, supra.* Especially when we take into account that the writ demanding payment is equivalent to a judgment ordering the satisfaction thereof within the term of thirty days without the holding of a trial. *Porto Rico Leaf Tobacco Co.* v. *Aldrey,* 13 P.R.R. 228, 234; *Perales* v. *District Court,* 43 P.R.R. 865; and *Vázquez* v. *Gutiérrez, supra.*

On the grounds above set forth, we hold that the violation of the legal provisions governing said proceeding constitutes a substantial error which affects the rights of the debtor, inasmuch as within the summary proceeding there was collected an amount for interest which was not secured by mortgage.

The defendant maintains that the lower court erred in finding that the value of the mortgaged property in 1932 was $32,000, because she thinks that the just and actual value

of said property at that time was $25,992.05, which, in view of the judgment annulling the summary foreclosure proceeding she must return to the plaintiff as the price of the mortgaged property, inasmuch as she is unable to return the specific property which she sold to the Municipal Housing Authority of the Capital of Puerto Rico in the year 1940. The plaintiff, in its third assignment of error set up against the judgment rendered by the lower court, also maintains that the lower court erred in estimating at $32,000 the value of the property in the year 1932, which was the date on which the debtor was deprived thereof, but it fails to state what was its value at that time and confines its argument to a discussion of its right to be awarded an amount representing the market value of the property in 1940, when it was sold, which it estimated at $39,000, on the ground that, since the summary foreclosure proceeding was void, the plaintiff never ceased to be the owner of the mortgaged property until it was sold in 1940. Since both assignments are intimately connected with each other we will discuss them jointly.

The essential question in this case, according to the pleadings and the proof, has hinged upon the market value of the mortgaged property at the time it was awarded to the defendant, that is, on April 21, 1932, and there was no contention, nor the plaintiff introduced any evidence, as to the value of the property in 1940. There is a marked inconsistency between the pleadings, the proof, and the brief submitted by the plaintiff, which now for the first time raises the question that the value which it should recover by reason of its having been unlawfully deprived of its property, is the market value of the property in 1940. This court can not consider on appeal the question thus raised, since the same was not submitted for consideration by the lower court.

The controversy raised in the lower court turned upon the value of the property in the year 1932. The evidence on this point was wholly conflicting and the lower court decided the conflict by holding that the market value of the property.

in 1932 was $32,000. Since it has not been shown that it committed manifest error in the weighing of the evidence nor that it acted under the influence of passion, prejudice, or partiality, its finding must be upheld.

The defendant urges that the lower court erred in finding that the gross rents, yielded by the property from the time she came into possession thereof in 1932 until when she sold it in 1940, amounted to $38,758.21, the net rents being $13,427.19. The plaintiff in its second assignment of error likewise urges that the lower court erred in finding that the amount to be paid by the defendant-appellant on account of rents and profits which the plaintiff-appellant failed to receive or might have received amounted to $38,758.21. Both parties having assigned the same error, although on different grounds, we will discuss the two assignments together.

The defendant maintains that the gross rents produced by the mortgaged property during the 8-year period in which she held possession thereof amounted to $38,293.63, and not to $38,758.21 as the court found, because it was shown that the sum of $34,812.39 was equivalent to the amount collected as rents from April 1932 to June 27, 1940, after deducting the 10 per cent commission which belonged to the collector García Cruz. If the total amount of the gross rents, less 10 per cent thereof paid to the collector, was $34,812.39, as stated by the lower court, it is obvious that 100 per cent of the gross rents should amount to $38,680.43. This error of computation should be corrected in the final judgment. She further urges that among the expenses for administration and preservation of the property amounting to $25,331.02, which the court held to have been proved, the 10 per cent of the gross rent paid as commission to the collector was not included. The plaintiff on the contrary maintains that in the item of $5,802.27, designated as administrative expenses, there is included the 10 per cent commission paid to the collector. It also maintains that the gross rents yielded or which might have been yielded by the property should amount to $48,000.

Really, we can not definitely state whether or not the 10 per cent commission above mentioned was included in the expenses for preservation and administration of the property; but the court determined what expenses should be deducted from the gross rents, thus:

| | |
|---|---:|
| Taxes | $8,027.49 |
| Insurance premiums | 1,602.21 |
| Repairs | 5,208.62 |
| Water | 3,455.61 |
| Light | 138.83 |
| Laborer for cleaning | 432.00 |
| Fees for electrical installation | 2.00 |
| Plumbing | 588.00 |
| Fees for drainage through land of the American Railroad Co. | 24.00 |
| Fees for State Insurance Fund | 51.99 |
| Administrative expenses | 5,802.27 |
| Total | $25,331.02 (*sic*) |

There is no doubt that the expenses approved by the court for preservation and administration of the property are those above set forth, and for the purpose of the case it is immaterial whether or not the expense item relating to the collection of the rents was included in the administrative expenses.

It having been determined that the administrative expenses amounted to $25,331.02, and that the gross rent totalled $38,680.43, this leaves a net rent amounting to $13,349.41.

Since in the errors assigned by both parties there is a divergence of opinion as to the total amount of gross rent which the property should have yielded and also as to the amount of the net rent, and since the evidence introduced by the parties was conflicting and the conflict was adjusted by the lower court in favor of the defendant without there being any showing of manifest error, passion, prejudice, or partiality on the part of the court in thus exercising its discretion, we are of the opinion that the alleged error has not been committed.

■ The defendant contends that the lower court erred in granting to the plaintiff-appellant interest at the legal rate on the sum of $30,000 for which she sold the property, from June 27, 1940, to September 14, 1943, inasmuch as when she sold the property for $30,000 she paid $1,000 as a sale commission and $117.15 for notarial and other expenses, and hence she asks that such disbursements be deducted from the purchase price before computing the amount of the interest at 6 per cent per annum to which the plaintiff is entitled.

We are of the opinion that the defendant is not entitled to such a reimbursement, since the deductions claimed formed no part of the expenses incurred in the administration and preservation of the property sold.

■ The plaintiff in its fourth assignment also urges that the court erred in adjudging the defendant to pay to it interest at the legal rate of 6 per cent per annum on $30,000, the price at which the property was sold from June 27, 1940, to September 14, 1943, because it is entitled, not merely to the above-mentioned legal interest, but also to an indemnity equivalent to the rents which might have been received by the defendant if she had not sold the property. Inasmuch as this assignment is connected with the seventh assignment set up by the defendant we discuss it here.

It was proved that the defendant was in possession of the property from April 21, 1932, to June 27, 1940, when it was sold to the Housing Authority of the Capital for $30,000.

The indemnity for the damages in this case includes, not only the amount of the actual loss sustained by the claimant, but also any profits which it may have failed to receive, and as the defendant must be regarded as a possessor in bad faith (§ 363 Civil Code, 1930 ed.), she is bound to pay for the fruits received and for those which the lawful possessor might have received (§ 384 Civil Code, 1930 ed.) after deducting the necessary expenditures incurred for the preservation of the thing. See *Capó* v. *A. Hartman & Co.*, 57 P.R.R. 190, 199. There was no showing that the defendant received any

rent subsequent to June 27, 1940, the date on which the property was sold to the above-mentioned Authority, which destroyed the buildings existing there in order to raise new structures on the lot, and hence the defendant can not be adjudged to pay for rents or fruits which she did not receive nor were produced. *Lókpez* v. *Fernández*, 61 P.R.R. 503, 533. The errors thus assigned by the contending parties are nonexistent.

The defendant urges that the lower court erred in awarding attorney's fees to the plaintiff-appellant in the sum of $400, because she was not obstinate in defending the action brought against her by the plaintiff. The latter in its seventh assignment of error also urges that the court erred and abused its discretion in granting to it only the sum of $400 as attorney's fees, since it maintains that such fees amounted to $5,000. Taking into account all the attending circumstances of this case, we are of the opinion that the court did not abuse its discretion in awarding to the plaintiff only the sum of $400 as attorney's fees.

The plaintiff in its fifth assignment maintains that the lower court erred in adjudging it to pay to the defendant interest at the rate of 10 per cent per annum on the mortgage instalment which became due on December 18, 1929, and at the rate of 9 per cent per annum on the remaining $23,000 from June 27, 1940, to September 14, 1943. The mortgage debt subsisted after the annulment of the summary foreclosure proceeding, and hence the plaintiff is bound to pay interest on that indebtedness from June 18, 1931, at the rate of 10 per cent per annum on the $2,000 instalment which became due on December 18, 1929, and at the rate of 9 per cent per annum on the remaining portion of the principal amount, up to September 14, 1943. There was no error.

Lastly, the plaintiff contends that the lower court erred in adjudging the defendant to pay to the plaintiff the sum of $297.35 as damages caused by the wrongful attachment which the latter had levied on the rent in order to

secure the effectiveness of the judgment, and it urges that it is entitled to be awarded the amount which it should have received as rent on the houses amounting to $1,000, and not the amount reported by the collector. The only evidence introduced on this point shows that the net proceeds of the fruits received during the period covered by the attachment amounted to $297.35. The error assigned is nonexistent. See *Lókpez* v. *Fernández, supra*.

For the reasons stated the judgment appealed from should be modified, as to the amount of the gross rent involved in accordance with the terms of this opinion and, as thus modified, the judgment will be affirmed.

Mr. Justice Córdova did not participate herein.